DICEY M. JAMES, Respondent, v. THE KANSAS CITY, PITTSBURG & GULF RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, February 23, 1897.

1. Railroads: DAMAGE FROM OVERFLOW: PLEADING. In an action against a railroad for damages from an overflow of plaintiff's land, alleged to have been caused by the negligent construction of defendant's road over a creek, where a general denial was filed, and the petition was amended by adding another claim for a loss from the same overflow, which defendant claimed added a new cause of action, and, on the overruling of a motion to strike out on that ground, obtained leave to file an answer to the amended petition, but no such answer was filed, nor the answer to the original petition refiled,—*Held*, that the cause of action as stated in the original petition was in nowise changed by the amendment, and it was unnecessary for defendant to file any other answer than the one already filed.

2. ————: ————: CONCURRING NEGLIGENCE. In such action, where it was conceded that the overflow complained of was the result of an extraordinary and unusual rainfall, but plaintiff claimed that the alleged injury was caused by the concurring negligence of defendant in failing to provide sufficient escapes for the water, it was necessary to show that such alleged negligence was one of the efficient causes of the injury; otherwise plaintiff was not entitled to a recovery.

*Appeal from the Newton Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED.

*Trimble & Braley* and *John T. Sturgis* for appellant.

The common law doctrine with reference to surface water has been repeatedly declared and adopted in the decisions of the highest courts of this state. *Abbott v. R. R.*, 83 Mo. 271; *Field v. R. R.*, 21 Mo. App. 600; *Gray v. Schribner*, 58 *Id.* 173; *Benson v. R. R.*, 75 Mo. 504. See, also, *Moss v. R. R.*, 85 Mo.

86; *R. R. v. Keyes*, 55 Kan. 205; *Collins v. R. R.*, 48 Mo. App. 398; *Schneider v. R. R.*, 29 *Id.* 68.

This case is similar in many respects to *Jones v. R. R.*, 84 Mo. 151; *Clark v. R. R.*, 36 *Id.* 202; Gould on Waters, sec. 258.

The immediate and only cause of the overflow was the extraordinary and unusual flood, and for this the defendant is not liable. *Ellet v. R. R.*, 76 Mo. 518; Sedg. on Dam., secs. 32, 33; Gould on Waters, secs. 258, 297, 298, and cit. in note; *Coleman v. R. R.*, 36 Mo. App. 476; *Trust Co. v. R. R.*, 57 Fed. Rep. 441; *R. R. v. School Dist.*, 96 Pa. St. 65.

The acts complained of were the acts of those who owned the railroad, the Kansas City, Ft. Smith & Southern Railway Company and the Philadelphia Construction Company, for which acts there is nothing in the pleadings or proof that will authorize a recovery from this defendant. *Rychlicke v. St. Louis*, 115 Mo. 662; Wood on Nuisances [2 Ed.], sec. 838.

*O. L. Cravens* for respondent.

Plaintiff has the right to sue for and recover damages even for permanent injuries to the realty, although holding under contract of sale. 3 Suth. on Dam., 366.

As there was no answer to the amended petition, there were no issues for the trial court, and none for this court to pass upon. R. S. 1889, sec. 2107; *Ticknor v. Voorhis*, 46 Mo. 110; *Rand v. Wall*, 26 Mo. App. 591; *Bayse v. Ambrose*, 28 Mo. 39; *Bank v. Umrath*, 55 Mo. App. 431, at 50; *City v. Gleason*, 15 *Id.* 29; Cobb. on Replevin, sec. 577.

Even though the flood was extraordinary, if the negligence of defendant combined with the unusual flood to injure plaintiff, defendant is liable. *Brink v.*

R. R., 17 Mo. App. 177; *Pruitt v. R. R.*, 62 Mo. 527; 102 *Id.* 238; 112 *Id.* 15.

Defendant can construct bridges and openings over water courses, so as not to impair their usefulness; but has no right to stop up a living stream of water with its roadbed, even though it owns the right of way. R. S. 1889, sec. 2543; *Hosher v. R. R.*, 60 Mo. 329–334; *Pinney v. Berry*, 61 *Id.* 359.

BIGGS, J.—The defendant operates a railroad in Newton county. Near the city of Neosho the railroad crosses Shoal creek valley. At that point Shoal creek runs north and south through the centre of the valley, the flow of the water being to the south. On the west side of the stream its banks are about twelve feet above the surface of the water at its usual stage. The banks on the east side are five or six feet lower. The stream is about one hundred feet wide at the point where the railroad crosses it. In the original construction of the railroad a solid embankment was constructed from the eastern edge of the valley across the lowlands to within about one hundred and twenty-five feet of the stream. From that point to the stream the railroad track was supported by trestlework. This embankment brought the track on the east side of the creek to the grade of the higher lands on the west side. On the west side of the stream and a short distance from its west bank, there is a low swale or depression. The railroad passed over this on a trestle. In 1894 the then owner of the railroad put in a new truss bridge across the stream. This bridge is one hundred and five feet long and rests on stone abutments on either bank. It stands twelve feet above the surface of the water at its ordinary flow. At the time this bridge was put in, a portion of the space occupied by the

trestle was filled up, leaving an opening of seventy-two feet under the trestle. The short trestle on the west side was also filled up and a culvert substituted. Eleven hundred feet above this bridge on a straight line, or fifteen hundred feet if the meanderings of the stream are followed, is another bridge where a public highway crosses the creek. The plaintiff is the owner of a tract of land lying on the west side of the creek between the two bridges. The land extends a short distance north of the public road and extends south across it to within about two hundred feet of the railroad. North of the public road is a low swag or slough extending from the creek in a southwesterly direction through the plaintiff's land. Between the two bridges is another slough which runs for some distance through plaintiff's land and almost parallel with the stream. About half way between the two bridges Hickory creek, which flows from the south, empties into Shoal creek. In December, 1895, the plaintiff's land and crops were damaged by overflow water from Shoal creek. She claims that the direct and proximate cause of the overflow was the negligent construction of the railroad across Shoal creek. The amended petition, after reciting the manner of the original construction of the railroad, charged, "that in the year 1893, the defendant unskillfully, carelessly, and negligently rebuilt and reconstructed said bridge by putting in a new one much lower than the old one and taking out about twenty-five rods of approaching trestle on the south end thereof and entirely replacing the same and filling it up with earth and stone, so that at the date hereinafter mentioned, instead of having a trestle at said bridge which would permit the free passage of water, it was replaced with an embankment of earth and stone of about fifteen feet high; that the defendant in the year 1893 took out the trestle

work across the slough which was about seventy-five feet long, and unskillfully, carelessly and negligently replaced it with a solid earth and stone embankment, with a small escape of three by three feet for the water of said slough, which was wholly insufficient for that purpose.

"Plaintiff further states that by reason of the careless, negligent, and unskillful construction and maintenance of said bridge by making it lower and shorter, and by filling it with solid earth and stone the space formerly occupied by the trestle on the south end thereof, and by the careless, negligent, and unskillful replacing of the trestlework across the slough with earth and stone, leaving only a small aperture for escape of water, by each several act, and by both, the defendant obstructed the free flow of water along Shoal creek, as it had done theretofore, and dammed up the proper waterway of Shoal creek, and to cause wood logs and drift to accummulate on the east side of said bridge and embankment; that on December 17, 1895, by reason of the carelessness and negligence of defendant in carelessly, negligently, and unskillfully reconstructing said bridge and taking out the approaching trestle, thereby narrowing the flow of water, and by taking out the trestle across the slough the water of Shoal creek was dammed up and caused to flow back upon the plaintiff's land on the upper and eastern side thereof and the crop of corn standing in the shock on said land was wholly destroyed, *as were also four acres of wheat planted in the ground,* to plaintiff's great damage, and also plaintiff's said land was permanently injured and damaged by reason of the soil, which is of a very rich quality, being washed away, together with fencing, and by gravel, stone and sand being deposited in large quantities thereon, by all of which plaintiff was greatly damaged in the sum

of two hundred and seventy-five dollars, for which she prays judgment."

The answer to the original petition contained a general denial. It further alleged that the plaintiff's damage (if she suffered any), was caused by the accumulation of surface water during an unusual and extraordinary rain. It was also averred that the alleged changes in the construction of the railroad were made by the Kansas City, Fort Smith & Southern Railway Company, the then owner of the road; that subsequently that company sold the road and its franchises to the Philadelphia Construction Company, and that the defendant had been put in possession of the road by the last named company, merely for the purpose of operating it and for no other purpose, except to make such repairs as were necessary only to the running of the road.

There was a trial before a jury, and at the close of the plaintiff's evidence and also at the close of all the evidence, the defendant asked for an instruction of nonsuit. This instruction the court refused to give, and the defendant excepted. The finding was for the plaintiff, and judgment was entered accordingly. The defendant has appealed.

There is a preliminary question which must be disposed of first. The original petition was amended by adding a claim for the value of four acres of growing wheat, which was alleged to have been destroyed by the same flood. The defendant claimed that by this averment a new cause of action was added, and for this reason it moved to strike it out. The bill of exceptions shows that when this motion was overruled the defendant asked for time to file an answer to the amended petition. The court replied that the answer would be considered as filed. In fact no such answer was filed, neither

RAILROADS: damage from overflow: pleading

was the answer to the original petition refiled. The trial progressed, however, as if the issues were fully made up. The plaintiff claims that there is nothing for us to review. There is no merit in this. The amendment merely added another item of damage, which it was alleged grew out of the same overflow. This in nowise changed the cause of action as originally stated and there was no necessity for the defendant to file any other answer than the one it had already filed, and which had not been withdrawn. *Bremen Bank v. Umrath*, 55 Mo. App. 43.

It is conceded that the overflow complained of was the result of an unusual and almost unprecedented rainfall. All of the evidence goes to show that Shoal creek valley was covered with water. Several witnesses on both sides testified that no land was visible, and the boundaries of the flood were marked only by the hills on either side. Concerning the plaintiff's land, the evidence tended to show that the water first broke through the slough north of the county bridge; that soon after the water began to flow through the slough between the two bridges and to overflow the adjacent lands, and that when the flood reached its highest the entire land was covered with water, and the fences and shocks of corn and other *debris* were swept down the stream by the swift currents. It is conceded that if the immediate and only cause of the overflow was an extraordinary and unusual flood, the defendant is not liable in the action. *Ellet v. Railroad*, 76 Mo. 518; *Coleman v. Railroad*, 36 Mo. App. 476. The theory, however, upon which the plaintiff tried the case, is that in the building of the bridge and the reconstruction of the adjacent roadbed, the railroad company negligently failed to provide sufficient space for the escape of the waters in Shoal creek in *ordinary stages of high*

<div style="margin-note">DAMAGE from overflow: concurring negligence.</div>

*water*, and that even though the flood in question was extraordinary, if the alleged negligence of the defendant company combined with the unusual flood to produce the injury complained of, the defendant is liable. The circuit court was of the opinion that this theory found some support in the evidence, and the instructions, which were given, were drawn so as to present that view of the case.

On the other hand the defendant contends that there is no substantial evidence that the waters of Shoal creek were in any manner obstructed by the bridge, or that the defendant was negligent in the construction of the bridge, or that the manner of the construction of the railroad at the bridge directly contributed to the plaintiff's injuries. The demurrer to the evidence presents these questions.

The railroad company had authority to bridge Shoal creek, but in doing so the statute required it to restore the stream "to such state as not unnecessarily to have impaired its usefulness." Sec. 2543, R. S. 1889. Usually this duty is discharged by erecting a bridge across the entire bed of the stream and putting it high enough to prevent the catching and accumulation of drift during high water, and by placing no obstructions in the stream so as to impede the free passage of the water therein. There is not a particle of evidence that the defendant failed in these matters. It is conceded that the span of the bridge extended from bank to bank; that it was twelve feet above the surface of the water at its usual stage, and there was no evidence of the accumulation of drift above it, although the water in the creek was higher than it was ever known, and there is no pretense that any obstructions were placed in the channel.

It may be argued that on account of the lowness of the banks on the east side of the creek it was the

duty of the railroad company to provide additional escapes for the water so as to prevent overflow on the lands above, which would likely occur even in ordinary freshets, if the entire body of water was compelled to pass under the bridge. Conceding this, the question then is whether there was substantial evidence that the seventy-two feet of trestle were insufficient for the purpose stated. Two or three witnesses said so, but they did not claim to be experts, and their testimony is unsupported by a single fact or circumstance. Neither of them stated that he had ever witnessed the action of the water during an ordinary overflow, and the circumstances attending the freshet complained of afford no just or reasonable grounds of comparison, for all of the witnesses testified that the entire valley was needed to carry off the water.

But if this point be conceded, the plaintiff's action must fail, for the reason that there is no substantial evidence that the concurring negligence of the defendant in failing to provide sufficient escapes for the water was one of the *efficient causes* of plaintiff's damage. *Coleman v. Railroad, supra; Ellet v. Railroad, supra.* In the *Coleman* case we find the following satisfactory statement of the law as announced by the supreme court of Pennsylvania. "We apprehend that the concurring negligence, which, when combined with the act of God, produces the injury, must be such as is in itself a real producing cause of the injury, and not a merely fanciful, or speculative, or microscopic negligence which may not have been in the least degree the cause of the injury. In other words, if the act of God in the particular case was of such an overwhelming and destructive character as by its force, and independently of the particular negligence alleged or shown, to produce the injury, there would be no liability though there was some negligence in the maintenance of the

particular structure. To create a liability, it must have required the combined effect of the act of God and the concurring negligence to produce the injury. The present case affords a fair illustration of the reason for this distinction. The defendant's witnesses testified that the force and volume of the water were so very great that it would have required one hundred and twenty such culverts to pass it off." *Railroad v. School District*, 96 Pa. St. 65. In the case at bar it is only by the merest conjecture that the alleged concurring negligence of the defendant can be made one of the efficient causes of the overflow of the plaintiff's land. The entire testimony tends to prove that the rainfall was so great that the result would have been the same had there been no railroad or railroad bridge. One of the witnesses gave it as his opinion that the railroad dump across the lowlands offered such resistance to the water as to increase the overflow over plaintiff's farm. This statement was, under the circumstances, a mere guess. But it had no bearing, for the question was whether in ordinary high water the space left for the escape of water was reasonably sufficient. The statement of the witness was immaterial for the further reason that the railroad company had the right to construct and maintain a solid dump through the lowlands, and if, in doing so, surface or overflow water was obstructed or diverted to the damage of a land owner, the defendant was not liable therefor. *Abbott v. R. R.*, 83 Mo. 271; *Clark v. R. R.*, 36 Mo. 233; *Collin v. R. R.*, 48 Mo. App. 398; *Schneider v. R. R.*, 29 Mo. App. 68.

Looking at the case from every standpoint, and giving the evidence a construction most favorable to the plaintiff's case, we are unable to sustain the judgment, if well settled principles are to govern. We therefore conclude that the defendant's demurrer to the evidence ought to have been sustained. The judg-

ment will be reversed. As there seems to be no dispute about the controlling facts, the cause will not be remanded. All the judges concur.